FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*11:12 am, Dec 29, 2025*
JEFFREY P. COLWELL, CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

---

**ROBERT ANDREWS**,

Plaintiffs,

v.

**SEAN F. SOON**,

Defendant.

### Civil Action No. 1:25-cv-03400-CNS-TPO

---

### NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER

The undersigned non-party, Joseph A. Camp, pro se, doing business as Ex Post Facto, LLC ("Movant"), the registrant and operator of the domain https://notforaurora.com/ (the "Website"), hereby submits this Notice and Memorandum of Law in support of Movant's several Motions in this matter (the "Motions"), including the Motion to Quash Subpoena and for Sanctions (Document 26) and the Special Motion under Colorado's Anti-SLAPP Statute to Quash Subpoena and for Fees and Sanctions. This filing justifies the email communications with attorneys involved in this case, which have been or may be characterized as "racist" and "offensive" by certain parties, including in anticipation of complaints or "tears" from Plaintiff Robert Andrews and his counsel given his own history of race-baiting and anti-white rhetoric, as well as that of his associates.

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

These communications, sent in an effort to informally resolve the subpoena, constitute protected speech under the First Amendment, including hyperbolic expressions designed to demonstrate the outer limits of permissible criticism against public officials and public figures. They do not reflect Movant's personal beliefs but rather illustrate the extent of protected hyperbole in political discourse, and they do not warrant sanctions, adverse inferences or further scrutiny.

As detailed below, a public official's censorship of speech -even highly offensive speech- is far worse than the offensive speech itself, as it undermines the foundational principles of the First Amendment and invites abuse of governmental power to suppress dissent. Furthermore, no adverse inference can be drawn from the language of the emails with regard to Movant's matters at bar, including the motions to quash the subpoena and for sanctions, as such language is irrelevant to the legal merits, pertains solely to protected expression during informal resolution attempts, and does not bear on the procedural or substantive issues of anonymity, undue burden, or First Amendment protections, abuse of process and other issues raised in the Motions.

## I. FACTUAL BACKGROUND

Movant is Joseph A. Camp, a U.S. citizen residing in Rio de Janeiro, Brazil, operating under the trade name Ex Post Facto, LLC. Movant is a non-party to this action, has no knowledge of Defendant Sean F. Soon or the underlying claims, and maintains the Website as a platform for journalistic commentary on public figures in Colorado politics. As a journalist critiquing public officials from abroad, Movant relies on anonymity to protect against retaliation, including physical threats stemming from his reporting on controversial topics such as extremism in

local politics. This residency in Brazil further complicates the subpoena's reach, as it raises jurisdictional issues under international law and exceeds the geographical limits of Fed. R. Civ. P. 45, potentially requiring compliance with treaties like the Hague Convention for service abroad. Movant's operation of the Website under a pseudonym underscores the importance of First Amendment protections for anonymous speech, which the Supreme Court has long recognized as essential to fostering open discourse on public matters without fear of reprisal. See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995).

The Website, [https://notforaurora.com/](https://notforaurora.com/), critiques Plaintiff Robert Andrews (full name Rob Lee Andrews) as an "extremist" and a "danger to Aurora's future," featuring blog insights, primary source documents, a document library, gallery images, videos from his public appearances, endorsements by individuals with alleged extremist ties, policy analyses, campaign expense breakdowns, and contributor lists. It emphasizes protected First Amendment commentary on public figures and allows anonymous comments. The Website was created during Andrews' 2025 campaign for Aurora City Council At-Large, a race he won on November 4, 2025, after previous failures at numerous political offices.

This pattern of political persistence highlights Andrews' public profile, subjecting him to heightened scrutiny as a public official, where criticism -even sharp or offensive- is a cornerstone of democratic accountability. The content on the Website (which is more formal, and uses less offensive language) draws from publicly available records and aims to inform voters about potential risks associated with Andrews' associations and policies, serving a vital public interest in transparency regarding elected officials.

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

The subpoena was issued on December 19, 2025, by Plaintiff Robert Andrews to Automattic Inc. d/b/a WordPress.com d/b/a Knock Knock WHOIS Not There, LLC ("Automattic"). It commands Automattic to produce by January 5, 2026, a sweeping array of documents and electronically stored information ("ESI"), including non-public registrant data, account details, IP addresses with timestamps and actions, billing information (sans full card numbers), and transfer histories—all "sufficient to identify" the Website's operator. It claims to be "limited to information necessary to identify the individual(s) or entity(ies) responsible," but reads like a wishlist for a digital autopsy, far exceeding what is proportional or relevant to the underlying litigation between Andrews and Soon, which is completely and utterly unrelated to Movant's Website or activities.

The subpoena arises from Movant's protected exercise of free speech rights on a matter of public concern, and Plaintiff cannot show a reasonable likelihood of prevailing on any underlying claim, pursuant to Colorado's anti-SLAPP statute, Colo. Rev. Stat. § 13-20-1101. The subpoena must be quashed because it seeks to pierce the veil of anonymous political speech protected by the First Amendment without any prima facie showing of wrongdoing, imposes an undue burden on Movant (including personal safety risks), and exceeds geographical limits under Fed. R. Civ. P. 45 while failing to comply with procedural safeguards. This overbroad demand not only chills speech but also risks exposing sensitive data that could be misused, particularly given the history of threats against Movant detailed below.

Upon learning of the subpoena, Movant attempted informal resolution through a series of emails to Plaintiff's counsel at HKM Employment Attorneys LLP (including Abby Zinman, Shelby Woods, Alyssa Colwell). These emails, attached

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

as Exhibit to the Motions (comprising the email chain from December 22-23, 2025), demonstrate Movant's efforts, albeit employing offensive rhetoric (as the First Amendment permits). Specifically:

- On December 22, 2025, at 8:15 PM, Movant (as "*John Doe*" via jdpromotions2025@gmail.com) emailed Abby Zinman and others, initiating conferral with pointed, hyperbolic critiques of the subpoena as an abuse of process against anonymous speech, using offensive rhetoric -including racially charged hyperbole- to underscore the perceived overreach against a critic of a public figure and to test the boundaries of protected speech. For example, the email included forceful language such as "*ACTIONABLE SLAPP SUBPOENA. THE TIME IS 9:35PM MY LOCAL ON DECEMBER 22, 2025. TICK TOCK. COPY ME ON THE EMAIL OR DOCUMENTS YOU SEND TO AUTOMATIC AND ALL OTHER SERVICE PROVIDERS YOU HAVE ISSUED A SUBPONEA TO,*" which, while aggressive and in all caps to convey urgency and frustration, serves as hyperbolic expression protected under the First Amendment and does not provide grounds for any adverse inference on the substantive issues of the Motions, such as the lack of validity of the subpoena arguments or Movant's anonymity rights.
- Subsequent exchanges prompted further emails from Movant emphasizing the futility of polite discourse and employing exaggerated, offensive language to illustrate the outer limits of First Amendment protections when critiquing public officials after counsel for Plaintiff Andrews set the bar with their own futility responses.

Opposing parties have may label these emails as "racist and offensive," seemingly as part of a broader campaign to discredit Movant and associate him with extremist

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

ideologies. This language was intentionally designed to demonstrate, from the outset, the outer limits of protected speech under the First Amendment when targeting public officials with criticism. It does not reflect Movant's personal beliefs but rather illustrates the extent of permissible hyperbole in political discourse. This Notice is filed in anticipation of Plaintiff's complaints and tears regarding these emails and their language, particularly given Plaintiff's own history of race-baiting and anti-white rhetoric, as well as that of his associates like Tay Anderson, a Denver political figure with close ties to Andrews. For instance, Movant's Website and journalism critique such rhetoric in the context of Andrews' public record, including his associations with extremist ties and policy positions that Movant alleges involve divisive racial narratives, such as inflammatory statements on race relations in Aurora politics that stoke division for political gain. These critiques are grounded in public statements and actions by Andrews and his allies, which Movant argues exemplify the very race-baiting tactics that the emails hyperbolically mirror to highlight hypocrisy in attempts to censor criticism.

Notably, Movant has faced threats: On September 25, 2020, Tay Anderson hosted a Zoom call with approximately 20 "activists", including discussions related to "addressing concerns" about Movant's activism and journalism critiquing Black Lives Matter and Anderson. Movant alleges that during this or a similar call, participants—including possible associates of Andrews—discussed ways to "silence" his critical journalism, with offers of money for harm. Revealing IP logs and access patterns could turn a virtual vendetta into a real-world risk—especially from abroad, where Movant's location in Brazil adds layers of vulnerability, including potential for international harassment or misuse of data by politically motivated actors. These threats underscore the undue burden of the subpoena, as

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

compliance could endanger Movant's safety and chill future journalistic endeavors on sensitive political topics. The history of such intimidation tactics against critics of public figures like Andrews and Anderson further illustrates why anonymous speech protections are crucial, preventing powerful individuals from weaponizing legal processes to suppress dissent.

In a unrelated case, <u>Noshirvan v. Couture, et al., Case No. 2:23-cv-01218-JES-KCD (M.D. Fla.)</u>, a party operating under the pseudonym ***<u>John Doe 4</u>*** attempted to label Movant Joseph A. Camp as a racist and white supremacist through a frivolous motion. Specifically, on March 2025, John Doe 4 filed a <u>Motion to Declare Joseph A. Camp a White Supremacist (Doc. 297)</u>, attaching <u>37 pages of exhibits</u> purportedly demonstrating Movant's alleged affiliations, views, or communications deemed racist or extremist. This motion argued that such a declaration was "*necessary and warranted to safeguard the integrity of these proceedings and the safety and dignity of involved parties and the broader community*," essentially seeking to inject inflammatory character attacks into the litigation to prejudice the court and parties against Movant. The Middle District of Florida, in its Order dated April 11, 2025 (<u>Doc. 318</u>), denied the motion outright, finding it lacked "*any discernable legal argument or authority in support*" and appeared "*to have been filed for an improper purpose*." The Court further characterized the motion as "*frivolous*," emphasizing that it served no legitimate legal function and instead aimed to harass or defame Movant without basis. The ruling warned of potential sanctions for similar future filings, highlighting the impropriety of using judicial proceedings to brand individuals with unsubstantiated labels like "racist" or "white supremacist" merely to discredit their involvement or speech. This precedent directly applies here, as attempts to characterize Movant's

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

emails as racist mirror the failed tactics in Noshirvan, rejecting such efforts as abusive and contrary to due process. The Florida court's decisive rejection serves as a cautionary example, reinforcing that courts should not entertain baseless invitations to label individuals in ways that chill protected speech.

## II. LEGAL ARGUMENT

1. **The Communications Are Protected Under the First Amendment.** The emails in question constitute protected speech under the First Amendment to the United States Constitution. Speech, even if offensive, racist in tone, or controversial -especially when hyperbolic and directed at public officials or their representatives- is shielded unless it falls into narrow exceptions such as true threats, incitement to imminent lawless action, or defamation proven with actual malice. See Brandenburg v. Ohio, 395 U.S. 444 (1969); New York Times Co. v. Sullivan, 376 U.S. 254 (1964). Here, the emails do not meet these thresholds; they are expressions of opinion, criticism, or factual assertions related to public figures and matters of public concern in this litigation. Labeling them "racist" does not strip them of protection, as viewpoint discrimination is impermissible. See Matal v. Tam, 582 U.S. 218 (2017) (holding that offensive speech cannot be banned based on its ideas). The use of hyperbole to illustrate speech limits against public officials further aligns with protections for political satire and exaggeration. See Hustler Magazine, Inc. v. Falwell, 485 U.S. 46 (1988). Moreover, in the context of attempting to resolve a subpoena that threatens anonymity, such robust expression serves to test and affirm the boundaries of free speech, ensuring that public officials cannot selectively silence critics under the pretext of offense.

**NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER**

2. **Public Officials' Censorship of Offensive Speech Is Far Worse Than the Speech Itself.** The Supreme Court has repeatedly emphasized that government censorship of offensive speech poses a greater threat to democracy than the offense caused by the speech. As stated in <u>Texas v. Johnson, 491 U.S. 397 (1989)</u>, "*[I]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.*" Similarly, in <u>Street v. New York, 394 U.S. 576 (1969)</u>, the Court held that "*[T]he public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.*" This principle underscores that allowing public officials like Plaintiff to censor or punish speech they deem offensive -such as through subpoenas aimed at chilling criticism- invites viewpoint discrimination, where the government can suppress dissenting or minority views under the guise of protecting sensibilities. In <u>Matal v. Tam</u>, Justice Alito noted that "*Speech may not be banned on the ground that it expresses ideas that offend,*" while Justice Kennedy warned in his concurrence that such censorship risks turning the government into an arbiter of acceptable speech, which can be abused to silence opposition. Justice William O. Douglas further articulated the danger: "*Restriction of free thought and free speech is the most dangerous of all subversions.*" Here, Plaintiff's subpoena and potential complaints about the emails exemplify this subversion, seeking to unmask and intimidate a critic rather than engage in the marketplace of ideas. This is particularly ironic given Plaintiff's own race-baiting rhetoric and associations, which Movant's Website critiques as divisive, highlighting how censorship tools can be wielded against those exposing such conduct. The

NON-PARTY NOTICE AND MEMORANDUM OF LAW JUSTIFYING OFFENSIVE EMAIL
COMMUNICATIONS WITH ATTORNEYS PRIOR TO FILING MOTIONS IN THIS MATTER

harm of censorship far outweighs any transient offense from speech, as it erodes public trust in institutions and stifles the robust debate essential to self-governance.

3. **Justification in Context of the Litigation and Anti-SLAPP Protections.** The emails were sent in the context of potential litigation where Movant, as a non-party, has been subjected to a sweeping subpoena unrelated to the underlying claims between Plaintiff and Defendant. They serve to defend against these intrusions, provide context on safety risks, or seek clarification -actions justified under the litigation privilege or as necessary for due process. Even if certain language is pointed or offensive, it does not rise to actionable misconduct, especially given the heated nature of politics and Plaintiff's own racist rhetoric. Imposing restrictions or adverse inferences would chill legitimate advocacy, violate Movant's rights, and contradict Colorado's anti-SLAPP protections, which safeguard against judicial abuse to prevent chilling of public participation. See Colo. Rev. Stat. § 13-20-1101 (declaring it in the public interest to prevent chilling of public participation through judicial abuse and to protect free speech rights). Movant's involvement now presents a matter of first impression: whether Colorado's anti-SLAPP statute applies to a third-party subpoena issued in unrelated litigation that effectively serves as a strategic tool to chill protected speech. Movant has urged the Court to extend the statute's protections here, consistent with the Anti-SLAPP legislative purpose to deter meritless actions that burden constitutional rights.

4. **No Basis for Sanctions, Adverse Inferences or Restriction.** To the extent any party seeks to sanction Movant or restrict his communications or asks

the Court for adverse inferences based on these emails, such efforts are improper and potentially sanctionable themselves.

Dated: December 28, 2025

Respectfully submitted,

/s/ Joseph A. Camp

Joseph A. Camp

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2025, a true and correct copy of the foregoing Notice was served via email on all counsel of record in this action, and interested parties, pursuant to Fed. R. Civ. P. 5(b).

/s/ Joseph A. Camp

Joseph A. Camp