**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-3400-CNS-TPO

ROBERT ANDREWS,

     Plaintiff,

v.

SEAN F. SOON,

     Defendant.

---

**DEFENDANT'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

Defendant Sean F. Soon ("Soon"), by and through his attorneys, Gordon Rees Scully Mansukhani, LLP, respectfully submits this Partial Motion to Dismiss Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 8. In support thereof, Defendant states the following:

**Certificate of Conferral Pursuant to D.C.COLO.LCivR 7.1(b)**

Counsel for Defendant conferred with Counsel for Plaintiff on March 10 and 19, 2026 regarding this Motion. Plaintiff opposes the relief sought herein.

**INTRODUCTION**

In his Second Amended Complaint, Plaintiff asserts claims of Discrimination under the 42 U.S.C. § 1981, Defamation, Defamation *Per Se*, Tortious Interference with a

1

Contract, Tortious Interference with Prospective Business Relations, and Intentional Infliction of Emotional Distress. *See* Am. Compl. ¶¶ 135-238. Soon seeks dismissal of Plaintiff's first, second, third, fourth, fifth, fourteenth, fifteenth, and sixteenth claims.

Plaintiff's first claim, recognizes Plaintiff had an employment contract with CommunityWorks not Soon—a volunteer board member. *See* Am. Compl. ¶ 139. Soon was not a CommunityWorks employee at the time any employment contract was entered into or terminated. *See* Am. Compl. ¶¶ 18, 21, 87, 139. With no contract between Plaintiff and Soon, and as Soon cannot be held liable as an *individual employee*, Plaintiff's first claim lacks a factual basis and fails to state a claim for which relief can be granted. *See* Am. Compl. ¶¶ 21, 139; *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477, 126 S. Ct. 1246, 1250, 163 L. Ed. 2d 1069 (2006).

Plaintiff's tortious interference claims—Claims 14 and 15—similarly fail to state a claim as they do not allege any specific actions or behavior by *Soon* but rather admit the termination was "considered" and "approved" by the nine member Board of Directors, of which Soon was not the Board Chair. *See* Am. Compl. ¶¶ 51, 79-81.

Plaintiff asserts twelve claims of defamation/defamation per se to assert new dates and times outside of the statute of limitations. Plaintiff's second and third claims involving a state government official cannot proceed pursuant to the qualified privilege. Plaintiff's fourth and fifth claims must also be dismissed as they lack specificity required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Pursuant to Colorado state and federal case law requiring extreme and outrageous conduct as an element of an Intentional Infliction of Emotional Distress claim, Plaintiff's sixteenth claim fails as reasonable persons do not differ on whether Soon's alleged

conduct was sufficiently outrageous. The allegations contained in the Second Amended Complaint against Soon do not meet the high burden.

Plaintiff fails to state a claim under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff's first, second, third, fourth, fifth, fourteenth, fifteenth, and sixteenth claims are fatally flawed such that any additional amendments would be futile. Soon requests the Court dismiss these claims in Plaintiff's Second Amended Complaint with prejudice.

## **LEGAL ARGUMENT**

### I.    STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint's factual allegations must have "enough heft" to demonstrate that the pleader is entitled to relief.  *Rueb v. Zavaras*, 371 F. App'x 982, 986 (10th Cir. 2010) (quoting *Twombly* at 557). Facts that are "merely consistent" with a defendant's liability are insufficient, and a plaintiff does not establish plausibility where "more likely explanations" exist. *Twombly*, 550 U.S. at 557.

### II.    BACKGROUND

3

Plaintiff began working at CommunityWorks in 2016 and was promoted to the President and Chief Executive Officer ("CEO") in May 2018. Am. Compl. ¶ 18. In or around 222, Soon joined the nonprofit's Board of Directors while continuing to operate his law practice. Am. Compl. ¶¶ 20-21. Soon maintained his law practice during the entirety of Plaintiff's employment with CommunityWorks. Am. Compl. ¶ 20. He was one of nine Board members and was not the Board Chair. Am. Compl. ¶ 51. In March 2024, Plaintiff was terminated by the Board. Am. Compl. ¶ 79. The Board explained that it had found Plaintiff had made "organizational decisions without the approval of the [B]oard, compromising the sustainability of the organization, and creating unapproved financial partnerships with entities that endanger the health of Community Works." Am. Compl. ¶ 81. The nonprofit then entered board receivership. Am. Compl. ¶ 82. Only following Plaintiff's termination did Soon step into the interim role of President and CEO of CommunityWorks. Am. Compl. ¶ 87. CommunityWorks was dissolved in or around December 2024. Am. Compl. ¶ 22.

In his Second Amended Complaint, Plaintiff alleges that Soon's act of discrimination against him was the adverse action of his termination. Am. Compl. ¶ 142. Plaintiff admits this was a decision made by the entire Board. Am. Compl. ¶¶ 79-81. Plaintiff admits Soon was one of nine members on the Board. Am. Compl. ¶ 51. At no point in his Second Amended Complaint does Plaintiff allege that Soon was an employee at any time during Plaintiff's employment, nor that any other Board member was an employee. Plaintiff alleges he was discriminated against by being subjected "to less favorable terms and conditions of employment compared to employees not a part of Plaintiff's protected class; subjecting Plaintiff to degrading comments and conduct based

4

on Plaintiff's race and color; and ultimately terminated and/or aiding, abetting, inciting, compelling or coercing the discriminatory termination of Plaintiff's employment." Am. Compl. ¶ 145. Plaintiff alleges defamation and defamation per se based on statements allegedly made by Soon about Plaintiff to various individuals, but at issue here, to the Colorado Department of Human Services and "employees" of another nonprofit. Am. Compl. ¶¶ 117, 167.

## III.    SECTION 1981 CLAIM FAILS

Under 42 U.S.C. § 1981 ("Section 1981"), "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence…" 42 U.S.C.A. § 1981(a). "The term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the *contractual relationship*." *Id.* (emphasis added).

In addition to proving intentional discrimination, an employee alleging employment discrimination under § 1981 must prove that the discrimination arose out of a contractual relationship. *Hawkins v. Pepsico, Inc*., M.D.N.C.1998, 10 F.Supp.2d 548, affirmed 203 F.3d 274, certiorari denied 121 S.Ct. 181, 531 U.S. 875, 148 L.Ed.2d 125, rehearing denied 121 S.Ct. 613, 531 U.S. 1031, 148 L.Ed.2d 524.

In revising Section 1981 in 1991, Congress reaffirmed its focus on the contractual relationship element of the claim. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477, 126 S. Ct. 1246, 1250, 163 L. Ed. 2d 1069 (2006). In fact, it positively reinforced that element by including in the new § 1981(b) reference to a "contractual relationship." *Id.* Any claim thus requires "identify[ing] an impaired contractual relationship." *Id.* at 477.

5

In *McDonald*, a black man and shareholder of JWM Investments, filed suit against Domino's Pizza under Section 1981 in his personal capacity as an individual. McDonald alleged that Domino's entered into and broke contracts with JWM Investments because of racial animus toward McDonald. *Id*. at 473. Domino's responded that McDonald as an individual was never a party to any contract with Domino's relying on the "basic proposition that a corporation is a separate legal entity from its stockholders and officers." *Id*. at 474. The U.S. Supreme Court held in Domino's favor finding that McDonald's claim failed as "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id*. at 480.

Here, Plaintiff's claim fails for the same reasons as in *McDonald*. Plaintiff admits any alleged employment contract is with CommunityWorks[1]. *See* Am. Compl. ¶ 139. Plaintiff has not filed this lawsuit against CommunityWorks—but rather, Soon as an individual. *See* Am. Compl. He does not allege Soon is a party to any alleged contract and expressly states his contract was between himself and CommunityWorks. *See* Am. Compl. ¶ 139. Even if Plaintiff could allege he has a contractual relationship with CommunityWorks, Plaintiff has failed to identify any "impaired contractual relationship" with Soon. Just as McDonald was not a party to the contract between JWM Investments and Domino's, Soon is not a party to any agreement between Plaintiff and CommunityWorks. Plaintiff cannot now claim Soon was a party to this agreement, which was entered into prior to the start of Soon's volunteer relationship with CommunityWorks. *See* Am. Compl. ¶¶ 139, 21.

Despite his admission that Soon was a volunteer board member throughout

---

[1] Plaintiff did not provide evidence in his initial disclosures of existence of any employment contract with CommunityWorks and Mr. Soon is not aware of any in existence.

Plaintiff's employment, Plaintiff argues that individual *employees* can be held liable under Section 1981 if they were personally involved in the discrimination. *See* Am. Compl. ¶ 140. Plaintiff's Second Amended Complaint correctly states: Plaintiff was hired in 2016. *See* Am. Compl. ¶ 18. Soon began volunteering as one of the nonprofit's nine board members in 2022, although never as Board Chair. *See* Am. Compl. ¶¶ 21, 51. Plaintiff was terminated by the Board in March 2024. *See* Am. Compl. ¶ 79. *After Plaintiff's termination*, CommunityWorks went into board receivership and Soon stepped into the interim role of President and CEO of CommunityWorks. *See* Am. Compl. ¶¶ 82, 87.

For the purposes of this Motion only, Soon does not dispute he was an employee of CommunityWorks for the eight months he served as Interim President and CEO to help dissolve the nonprofit and assist in reporting the misuse of funds to the proper authorities and organizations. However, Plaintiff's claim fails as Soon was never an employee of CommunityWorks *while Plaintiff had a contractual relationship with CommunityWorks*, and thus Soon could not have been involved as an employee in the alleged act of racial discrimination (i.e. broken contract between Plaintiff and CommunityWorks). The timeline identified in Plaintiff's Second Amended Complaint accurately reflects Plaintiff and Soon had no overlap in employment. Plaintiff's alleged contract with CommunityWorks was terminated months before Soon became an employee of CommunityWorks. Prior to that, as Plaintiff admits in his Second Amended Complaint, Soon was nothing more than one of nine volunteer board members. Soon was not an employee[2].

---

[2] Counsel could only locate one case in which a Section 1981 claim, albeit a retaliation claim, stood against individual board members. *Arnold v. Weld Cnty. Sch. Dist. RE-5J*, 677 F. Supp. 3d 1218 (D. Colo. 2023). Here, individual defendants named were school board members that were paid by the school district for their work on the board -- not the case here. The Court stated that claims against the board members must be based on their individualized actions and votes. Plaintiff makes no allegations in his Second Amended Complaint as to any voting record or individualized action by Mr. Soon that terminated Plaintiff but rather states that the Board as a whole approved his termination. Am. Compl. at ¶¶ 79-81.

Plaintiff cites *Flores v. City And Cnty. Of Denver*, 30 F. App'x 816 (10th Cir. 2002) in his Second Amended Complaint to assert individual employees can be held liable under Section 1981; however, this case involves an employee and her immediate supervisor who physically assaulted her. *See* Am. Compl. ¶ 140. In *Flores*, the Court very narrowly explains that "[i]n employment discrimination cases, § 1981 requires that there be an underlying employment contract between the plaintiff and *his or her employer*, but there is no requirement that the plaintiff must also be in privity of contract with a *supervisor or other co-employee* before the latter can be sued individually under § 1981." *Id*. at 819 (emphasis added). The Court could have expanded this holding to other third-party individuals adjacent to the employment at issue such as volunteers or board members, but chose not to by repeatedly citing employee, employer, supervisor, and co-employee.

Thus, Plaintiff fails to state a claim as Soon was not a party to the alleged contract Plaintiff admits was solely between himself and Community Works, was not an employee of CommunityWorks at the time the alleged discriminatory termination occurred, and therefore cannot be individually liable under Section 1981.

## IV.    SECOND AND THIRD CLAIMS SUBJECT TO QUALIFIED PRIVILEGE

A qualified privilege exists for communications by a party with a legitimate interest or duty to persons having a corresponding interest or duty in communications promoting legitimate individual, group, or public interests. *Churchey v. Adolph Coors* *401 Co., 759 P.2d 1336 (Colo.1988); *Wigger v. McKee*, 809 P.2d 999 (Colo.App.1990). A qualified privilege creates a presumption that the alleged defamatory communication was made in good faith and without malice. *Williams v. Boyle*, 72 P.3d 392, 401 (Colo. App. 2003), as modified on denial of reh'g (Feb. 6, 2003). The Supreme Court has said "[t]he commission

8

of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public...." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); see *Shoen v. Shoen*, 2012 COA 207, ¶ 25, 292 P.3d 1224 (statements made during a television interview implicating an individual in a highly publicized murder investigation related to a matter of public concern). Courts in various jurisdictions, including Colorado, have held that a private individual's report to law enforcement of *possible* criminal conduct is subject to the qualified privilege. *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo.App.1998); see also, e.g., *Gallo v. Barile*, 284 Conn. 459, 935 A.2d 103, 111–12 (2007); *Fridovich v. Fridovich*, 598 So.2d 65, 67–69 (Fla.1992); *Kelley v. Tanoos*, 865 N.E.2d 593, 599–600 (Ind.2007); *Jalou II, Inc. v. Liner*, 43 So.3d 1023, 1037 (La.Ct.App.2010); *Caldor, Inc. v. Bowden*, 330 Md. 632, 625 A.2d 959, 968–69 (1993); *Writt v. Shell Oil Co.*, 409 S.W.3d 59, 68–73 (Tex.App.2013)(emphasis added).

This has been extended to mean other public officials as well. *See* Restatement (Second) of Torts § 598 & cmts. e, f (1977) (conditional "public interest" privilege applicable to statements by private individuals to public officials concerning criminal behavior). In *Lawson v. Stow*, the Court of Appeals held that a private citizen had a strong public interest in reporting potential criminal child abuse to public employees who investigated allegations of child abuse, even though these employees were not law enforcement authorities, citing to the Restatement (Second) of Torts § 598 (privilege applies to communications to "a public officer ... who is authorized or privileged to take action if the defamatory matter is true"). *Lawson v. Stow*, 2014 COA 26, 327 P.3d 340.

Plaintiff's second and third claims rely on the same set of basic facts. Plaintiff

9

alleges Soon made "false allegations that Plaintiff had engaged in theft, conversion, embezzlement, and other misconduct related to his termination from CommunityWorks to at least one employee at the Colorado Department of Human Services – Employment First Division." *See* Am. Compl. at ¶¶ 153, 163.  While Soon denies this allegation, this is irrelevant as these alleged statements would be subject to a qualified privilege, even assuming the truth of Plaintiff's allegations. Plaintiff further alleges the Colorado Department of Human Services is "a governmental organization that partnered with CommunityWorks." *Id*. at ¶ 117. Here, Soon as a Board Member or as Interim President of CommunityWorks had a legitimate interest in reporting concerns of possible theft, fraud, or misconduct to the government agency was responsible for overseeing and auditing the use of public funds granted to CommunityWorks. Plaintiff admits Ms. Balu was an employee of the Colorado Department of Human Services. *Id*. at ¶¶ 153, 163. While not a law enforcement authority, Ms. Balu is and was authorized to take action if the alleged defamatory statement was true.

Plaintiff alleges facts that fall squarely within the qualified privilege. If true, Soon discussed fraud, theft, and misconduct with a member of a government organization that worked directly with, audited, and helped fund CommunityWorks. Plaintiff specifically and repeatedly ties these alleged comments to the government organization's role. *See Id*. at ¶¶ 117, 153, 163, 228. Soon's alleged comments regarding fraud or theft within the organization to the government organization who provides and oversees funding for it, is reasonable, legitimate, based in fact-finding, and undoubtedly subject to a qualified privilege. Plaintiff is thus barred from using these statements against Soon in a tort suit.

## V.    FOURTH AND FIFTH DEFAMATION CLAIMS LACK SPECIFICITY

10

Complaints must be plausible on their face and the Plaintiff must "plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Warne v. Hall*, 2016 CO 50, 373 P.3d 588. "A dismissal without prejudice under Rule 8 is within the sound discretion of the trial court." *Carbajal v. City & Cnty. of Denver*, 502 F. App'x 715, 716 (10th Cir. 2012). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir.2007). In *Carbajal*, the Tenth Circuit affirmed dismissal of Plaintiff's Complaint finding it "failed to give Defendants fair notice of the specific claims asserted against them because it was prolix, confusing, and conclusory, and failed to provide specific allegations regarding how each named Defendant allegedly violated Plaintiffs' rights." *Carbajal v. City & Cnty. of Denver*, 502 F. App'x 715, 716 (10th Cir. 2012).

Here, Plaintiff's fourth and fifth defamation and defamation per se claims mirror each other and suffer from the same problem. Plaintiff conclusorily alleges that "In approximately November 2025, Plaintiff learned Soon had repeated false allegations that Plaintiff had engaged in theft, conversion, embezzlement, and other misconduct…to additional employees of the National Institute for Work and Larning ("NIWL")." Am. Compl. at ¶¶ 167, 174. Plaintiff's claim does not provide any specific time frame as to when these statements were allegedly made, in what form (by letter, email, text, etc.), or most importantly—the identity of those who heard the allegedly false statements. It is illogical to allege that Plaintiff became aware that employees had heard allegedly defamatory statements about him but was not aware of who those employees are. A brief online

search states that this organization has over 2,200 "working experts" in multiple U.S. offices and offices outside of the country. Soon is not provided fair notice of the claims asserted against him by the broad, conclusory allegations contained in Plaintiff's fourth and fifth claims. Soon cannot adequately respond to a claim of a statement made to an unknown person, especially when Soon regularly worked with NIWL and many of its employees and the organization itself is a large organization. As such, Plaintiff's fourth and fifth claims fail to comply with Fed. R. Civ. P. 8 and should be dismissed. *Baker v. City of Loveland*, 686 F. App'x 619 (10th Cir. 2017)(dismissing Plaintiff's complaint as it did not "provide clarity about what each defendant allegedly did to incur liability).

## VI.    PLAINTIFF'S TORTIOUS INTERFERENCE WITH A CONTRACT CLAIM FAILS

A claim for tortious interference with contract has five elements under Colorado law: "(1) existence of a contract between the plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) the defendant's intentional, improper interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc*., 171 F. Supp. 3d 1092, 1120 (D. Colo. 2016) (citing Colo. Nat'l Bank of Denver v. Friedman, 846 P.2d 159, 170 (Colo. 1993)). Here, Plaintiff's claim fails as a matter of law as he fails to allege how Defendant specifically improperly interfered with the contract[3].

Even assuming that a third party contract existed that Soon had knowledge of, Plaintiff alleges that the contract was breached by his separation from CommunityWorks. Plaintiff's Second Amended Complaint distinctly states that this separation was considered and approved by the nine-person Board as a whole. Am. Compl. at ¶¶ 79-81.

---

[3] While Plaintiff has alleged a contract exists and alleged that Mr. Soon knew of it, no evidence of this has been put forth to date.

Plaintiff's Complaint states that "Upon information and belief, Plaintiff should be terminated at the time of the CommunityWorks' termination of Plaintiff." *Id*. at ¶ 91. This; however, is insufficient as a matter of law as Plaintiff has failed to allege how Soon specifically (and not the Board of Directors) improperly interfered with a contract to the extent that a third party breached that contract. Soon's mere thoughts on whether Plaintiff should or should not be employed do not show any action taken on his behalf to interfere with a contract. Plaintiff makes no allegation that Soon even voted in favor of his separation. Plaintiff makes no allegation that Soon unilaterally made the decision to end the contract. While Plaintiff may be able to reveal, through discovery, that the Board of Directors interfered with the contract, Plaintiff is alleges Soon specifically did so[4]. He has failed to state a claim and as such, it must be dismissed.

## VII.    TORTIOUS INTERFERENCE CLAIM FAILS

To establish a claim for tortious interference with prospective business advantage, a plaintiff must show that defendant engaged in (1) improper conduct with (2) the intention to induce or cause a third party not to enter into or continue business relations with the plaintiff, and (3) defendant actually induced or caused such result. *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.,* 311 F. Supp. 2d 1048, 1118 (D. Colo. 2004).

Plaintiff's claim here must fail for many reasons. First, Plaintiff must allege Soon specifically, and not the Board, caused the result he complains of. Plaintiff alleges no

---

[4] Notably, Plaintiff's claim appears to be at odds with his Section 1981 claim in which he states that Mr. Soon is one with CommunityWorks as a former employee and volunteer, arguing they should be considered within the same entity. However, in his Tortious Interference with a Contract claim, Plaintiff alleges that CommunityWorks is actually a third party, thus different than Mr. Soon. If Plaintiff succeeds on his Section 1981 claim, it presents an issue as to whether CommunityWorks can be said to be a third party contract beneficiary within the same set of facts.

actions taken by Soon specifically that state this claim. Further, Plaintiff's claim makes conclusory statements that Soon "improperly interfered" and Soon's "actions induced or otherwise caused third parties not to enter into or continue the prospective relations with Plaintiff." Am. Compl. at ¶¶ 231-232. Plaintiff does not define with any reasonable clarity what improper conduct is alleged or what "actions" induced these third parties. Soon again finds himself at a disadvantage attempting to prepare a defense against claims he cannot decipher.

Plaintiff's claim should be dismissed as it provides no allegation as to how Defendant specifically improperly interfered or caused a result of lost business with his actions. Plaintiff's claim should be dismissed pursuant to Fed. R. Civ. P. 8 as it makes conclusory statements that do not place Soon on notice of why he is allegedly liable under this claim.

## VIII.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS

To prevail on a claim for intentional inflection of emotional distress, also known as a claim for outrageous conduct, a plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff severe emotional distress. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo.App.2003). Such liability can be found only if the defendant's conduct toward another is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo.1988); *Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859, 865 (Colo.App.2001); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

An outrageous conduct claim may be submitted to the jury only if reasonable persons could differ on whether the defendant's conduct was sufficiently outrageous. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo.1999). "Generally, liability for outrageous conduct exists when "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Han Ye Lee v. Colorado Times, Inc*., 222 P.3d 957, 963 (Colo. App. 2009)(quoting *Rugg v. McCarty*, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970)).

Here, Plaintiff's Sixteenth Claim for Relief should be dismissed as applied to Soon. There is no credible or plausible evidence that Soon engaged in extreme and outrageous conduct. Plaintiff summarily alleges Soon made false allegations against Plaintiff concerning his career, criminal conduct, and sexual misconduct. Am. Compl. at ¶ 236. Even if this Court does find the alleged defamation to be plausible, spoken words without anything more are insufficient as a matter of law to constitute extreme and outrageous conduct as they do not meet the high bar required under Colorado law. *See McCarty v. Kaiser-Hill Co*., 15 P.3d 1122 (Colo. App. 2000) (finding an attempted vehicular assault was insufficient for extreme and outrageous conduct). In the few cases where words alone may be deemed sufficient, the Court looks to other factors including whether the Defendant was in a position of authority over the Plaintiff or whether the Defendant knew the Plaintiff was particularly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. *See Farmers Group, Inc. v. Trimble*, 658 P.3d 1370, 1377 (Colo.App.1982)(involving employees of a insurance company with control and authority over the insured's claim); *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo. App. 1982) (involving Defendants who knew the

15

Plaintiff was emotionally susceptible to verbal abuse after witnessing her husband's recent suicide); *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138 (D. Nev. 2014) (involving business that deliberately sought out Heroin addicts to convince them to enroll in a false rehabilitation program used to convert these individuals into the Church of Scientology.)

Plaintiff's Sixteenth Claim for Relief does not meet the high bar set forth in Colorado and should be dismissed as there is no plausible evidence Soon engaged in extreme and outrageous conduct.

## CONCLUSION

Plaintiff fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and fails to state a plausible claim under Fed. R. Civ. P. 8. Accordingly, Soon respectfully requests that the Court dismiss his first, second, third, fourth, fifth, fourteenth, fifteenth, and sixteenth claims with prejudice.

Dated this 20th day of March, 2026.

GORDON REES
SCULLY MANSUKHANI, LLP

*/s/ Anna M. Reinert*
Anna M. Reinert
Brittney T. Bulawa
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Telephone: 303-534-5160
Email: areinert@grsm.com
           bbulawa@grsm.com

*Attorneys for Defendant Sean Soon*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to all counsel referenced below, this 20th day of March, 2026.

Shelby Woods
Abby Zinman
HKM Employment Attorneys LLP
518 17th Street, Suite 1100
Denver, Colorado 80202
*Attorneys for Plaintiff*


 */s/ Anna M. Reinert*
For Gordon Rees Scully Mansukhani, LLP